UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DANIEL PAGE,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:16-cv-00600-MMD-WGC

ORDER

**I.   SUMMARY**

This petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by Daniel Page, is before the Court for adjudication of the merits of Page's remaining claims. As further explained below, the Court will deny Page's habeas petition, will deny him a certificate of appealability, and will direct the Clerk of Court to enter judgment accordingly.

**II.   BACKGROUND**

A criminal complaint was filed in Justice Court, North Las Vegas Township, Clark County, Nevada on November 10, 2010, charging Page with four counts of sexual assault with a minor under fourteen years of age and one count of use of a minor in producing pornography. (ECF No. 17-3.) Page waived his preliminary hearing on March 15, 2011. (ECF No. 17-4.) A criminal information was filed in Nevada's Eighth Judicial District Court, Clark County, Nevada on March 24, 2011, charging Page with one count of sexual assault and one count of use of minor in producing pornography. (ECF No. 17-5.) Page signed a guilty plea agreement on March 25, 2011. (ECF No. 17-6.) Page was arraigned on March 25, 2011, by Hearing Master Melisa De La Garza and entered a guilty plea. (ECF No. 17-7.)

Page filed a motion to withdraw his plea on April 8, 2011. (ECF No. 17-8.) The State opposed the motion. (ECF No. 17-10.) A hearing, a status check, and an evidentiary

hearing were held on Page's motion. (ECF Nos. 17-11, 17-13, 17-16.) District Court Judge Valerie Adair denied Page's motion to withdraw his guilty plea. (ECF No. 17-12; *see also* ECF Nos. 17-17 at 2, 17-18.)

Page was sentenced to two consecutive terms of life in prison, with the possibility of parole after ten years on each. (ECF No. 17-22.) Page appealed, and the Nevada Supreme Court affirmed his conviction on September 13, 2012. (ECF No. 18-1.)

On January 16, 2013, Page filed a *pro se* habeas petition in state court. (ECF No. 18-3.) The state district court appointed counsel, and, with counsel, Page filed an amended petition. (ECF No. 18-7 at 2-15.) The State opposed the petition, and Page filed a reply. (ECF Nos. 18-9, 18-10.) The court held an evidentiary hearing, and, on November 24, 2014, denied Page's petition. (ECF Nos. 18-11, 19.) Page appealed, and the Nevada Court of Appeals affirmed the denial of his petition on November 19, 2015. (ECF No. 19-6.)

Page initiated this federal habeas corpus action, *pro se*, on October 17, 2016. (ECF No. 6.) On November 30, 2016, the Court granted Page's motion for appointment of counsel. (ECF No. 5.) Counsel appeared for Page on December 14, 2016, and, with counsel, Page filed an amended petition on August 2, 2017. (ECF Nos. 9, 16.)

Page's amended petition asserted two grounds for relief. In Ground 1, Page claims his federal constitutional rights were violated because "[t]he trial court erred by denying [his] pre-sentence motion to withdraw his guilty plea as said plea was not knowingly, freely and voluntarily given." (ECF No. 16 at 8.) In Ground 2, Page claims that he "received ineffective assistance of counsel where counsel failed to adequately investigate [his] medical condition prior to entering his plea." (*Id.* at 11.)

On September 28, 2017, Respondents filed their motion to dismiss (ECF No. 25), in which they contended that both claims in Page's amended petition were barred by the statute of limitations. The Court granted Respondents' motion to dismiss in part, and denied it in part, on July 12, 2018. (ECF No. 28.) Specifically, the claim in Ground 1 of the Petitioner's amended habeas petition, that his plea was not knowing and voluntary

2

because he only learned after his plea that the victim and her father received messages, apparently from another person, after he was incarcerated, was dismissed. (*Id.*) In all other respects, he Court denied the motion to dismiss. (*Id.*)

On September 5, 2018, Respondents filed an answer to the amended habeas petition responding to Page's remaining claims. (ECF No. 29.) Page filed a reply on February 4, 2019. (ECF No. 34.)

## III. LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

3

"The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV. DISCUSSION

### A. Ground 1

In Ground 1, Page claims that his federal constitutional rights were violated because the trial court erroneously denied his motion to withdraw his plea.[1] (ECF No. 16 at 8.) Page argues that he was taking medication for a nervous condition, and as such, he did not understand the consequences of his plea. (*Id.* at 10-11.) Page points out that a combination of the two drugs he was taking, Paxil and Vistaril, can cause difficulty concentrating and confusion. (ECF No. 34 at 8.) Respondents assert that Page acknowledged that he was not under the influence of any drug that would impair his ability

---

[1]In the order entered July 12, 2018 resolving the motion to dismiss (ECF No. 28), the Court found that the first part of this ground—the claim that Page's plea was not knowing and voluntary because he learned only after his plea that the victim and her father received messages, apparently from another person, after Page was incarcerated—was barred by the statute of limitations. Accordingly, only the remainder of this ground—the claim that Page's plea was not knowing and voluntary because of his inability to comprehend the proceedings due to his medication—will be addressed.

4

to understand his plea agreement, and the state district court conducted a plea canvas prior to accepting his plea to determine that Page entered a knowing and voluntary plea. (ECF No. 29 at 5.)

This ground was raised on appeal in Page's state habeas action. (ECF No. 19-3 at 12 ("When Mr. Page entered his guilty plea, he was under the influence of mind-altering medications, rendering him unable to fully appreciate the consequences of his actions.").) The state courts determined that "[n]othing in the plea canvas suggests that [Page] was impaired and [Page] acknowledged in his guilty plea agreement that he was not under the influence of any substance or drug that impaired his ability to understand the agreement or the guilty plea proceedings." (ECF Nos. 18-1 at 2; 19-6 at 2-3.) The Court finds that the rulings of the state courts were reasonable.

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the defendant." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty

5

1  pleas" is "whether the plea represents a voluntary and intelligent choice among the
2  alternative courses of action open to the defendant").

3  In *Blackledge v. Allison*, the Supreme Court addressed the evidentiary weight of
4  the record of a plea proceeding when the plea is subsequently subject to a collateral
5  challenge. *See* 431 U.S. 63 (1977). While noting that "the barrier of the plea . . .
6  proceeding record . . . is not invariably insurmountable" when challenging the
7  voluntariness of his plea, the Court stated that, nonetheless, the defendant's
8  representations, "as well as any findings made by the judge accepting the plea, constitute
9  a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn
10 declarations in open court carry a strong presumption of verity." *Id.* at 74; *see also Muth
11 v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea
12 colloquy carry a strong presumption of truth."); *Little v. Crawford*, 449 F.3d 1075, 1081
13 (9th Cir. 2006).

14 With regard to competency, a criminal defendant may not plead guilty unless he
15 does so competently and intelligently. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993).
16 In order to meet the competency standard to plead guilty, it must be determined "whether
17 the defendant has 'sufficient present ability to consult with his lawyer with a reasonable
18 degree of rational understanding' and a 'rational as well as factual understanding of the
19 proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

20 Prior to his arraignment, Page received two medical progress notes while in jail.
21 (ECF Nos. 21-1 (sealed), 21-2 (sealed).) On December 16, 2010, it was reported that
22 Page was feeling anxious and exhibited severe hand tremors. (ECF No. 21-1 (sealed)) at
23 1.) And on February 25, 2011, it was reported that Page was feeling okay, had no
24 complaints, and that his medications for his anxiety were working fine with no reported
25 side effects. (ECF No. 21-2 (sealed) at 1.)

26 During his arraignment on March 25, 2011, Page stated his name, age, education
27 level, and his ability to read, write, and understand the English language. (ECF No 17-7
28 at 2-3.) Page also stated that he understood the charges against him and the sentence

that each charge carries, that he will be subject to lifetime supervision, that he will be required to register as a sex offender, that sentencing is up to the court, and that by pleading guilty he was giving up his Constitutional rights listed in the plea agreement. (*Id.* at 3-5.) Page stated that he was not forced to plead guilty, that he was pleading guilty of his own free will, that he read and understood the plea agreement, that his attorney was available to answer any questions about the plea agreement, that he discussed his case and his rights with his attorney, that he signed the plea agreement freely and voluntarily, and that he did not have any questions regarding his rights or the plea negotiation. (*Id.* at 3-5.) Finally, Page also admitted to the facts alleged in the criminal information. (*Id.* at 5.) Thereafter, the judge "accept[ed his] pleas of guilt as being freely and voluntarily entered into." (*Id.*)

Page's signed Guilty Plea Agreement provides he was "signing th[e] agreement voluntarily, after consultation with [his] attorney, and [he was] not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in th[e] agreement." (ECF No. 17-6 at 5.) The Guilty Plea Agreement also provides that Page was "not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair [his] ability to comprehend or understand th[e] agreement or the proceedings surrounding [his] entry of th[e] plea." (*Id.*)

Fourteen days after his arraignment and the signing of his Guilty Plea Agreement, Page filed a motion to withdraw his plea. (ECF No. 17-8.) A hearing was held on Page's motion on April 21, 2011. (ECF No. 17-11.) During the hearing, the judge indicated that Page and his counsel were welcome to follow up on the medication issue but that the motion to withdraw his plea would be denied with regard to the emails that were sent to the victim during Page's incarceration. (*Id.* at 5-7.)

A status check was held on May 19, 2011. (ECF No. 17-13.) At the status check, Page's counsel indicated that he obtained Page's medical records from the detention center "showing that Mr. Page had been under a physician's care and had been taking not one but two very powerful psychotropic drugs while he was in custody in the detention

center and even before that." (*Id.* at 2.) Following the status check, the State filed an *ex parte* motion for the release of Page's medical records. (ECF No. 17-14.) The *ex parte* motion was granted. (ECF No. 17-15.)

An evidentiary hearing was held on August 1, 2011. (ECF No. 17-16.) Mayra Carpenter, an employee of Parole and Probation, testified at the evidentiary hearing. (*Id.* at 23.) Ms. Carpenter interviewed Page and wrote his presentence investigation report. (*Id.*) She testified that she did not have any problems communicating with Page at that interview and that he told her that "he had some anxiety issues that every 90 days he was treated for it." (*Id.* at 26-27.) Ms. Carpenter also testified that she did not see any reason to interview Page's doctor because he only showed signs of anxiety and "most of the inmates that [she] interview[s] have some type of anxiety." (*Id.* at 43.) At the conclusion of the evidentiary hearing, the judge denied Page's motion to withdraw his guilty plea finding that there "has been nothing to cause the Court to have any concern that [Page] was unable to appreciate . . . what he was doing." (ECF No. 17-17 at 2; *see also* ECF No. 17-18.)

Page later testified at the post-conviction evidentiary hearing that that he was taking Vistaril while his case was pending. (ECF No. 18-11 at 33-35.) When asked how the Vistaril affected him, Page responded as follows:

> It seemed to calm my nerves, but I was confused more or less. I couldn't concentrate properly on any of the questions that were asked. At the time that the – the (unintelligible) or whatever came around, I wasn't asking the questions to try to answer as truthfully as I could. I did take time to answer 'em; it did take me some time so.

(*Id.* at 35.) During cross-examination, Page testified that he never complained of any side effects as a result of the Vistaril to any physician or staff member at the Clark County Detention Center. (*Id.* at 36.) Thereafter, during re-direct examination, Page testified that he is "very nervous, very anxious. So might have been confused. I don't know – I don't even know how to explain that anymore, you know." (*Id.* at 37.)

Importantly, during the plea colloquy, Page acknowledged that he understood the elements of the crime and admitted that he committed the crime. (ECF No. 17-7 at 5.)

8

Page further acknowledged that he read the plea agreement, discussed it with his counsel, and understood it. (*Id.* at 4.; *see also* ECF No. 17-6 at 5.) Due to these representations made by Page, as well as the judge's "accept[ance of his] pleas of guilt as being freely and voluntarily entered into," (*id.* at 5) Page faces a "formidable barrier in [this] subsequent collateral proceeding[ ]." *Blackledge*, 431 U.S. at 74.

And while Page may have been experiencing anxiety, there is no indication, other than his testimony, that he was confused and unable to comprehend the proceedings. *See Sandgathe v. Maass*, 314 F.3d 371, 379 (9th Cir. 2002) (reasoning that the petitioner "offered no evidence for his asserted incompetence to plead" because the doctor who met the petitioner prior to him entering his plea had no concerns about the petitioner's prescription drug use on his ability to defend himself in court); *cf. Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) ("[T]he fact that the petitioner has been treated with anti-psychotic drugs does not per se render him incompetent to stand trial."). And in fact, his testimony was not definitive in explaining his confusion: Page testified that he "was confused more or less" and "might have been confused." (ECF No. 18-11 at 34, 36.) Moreover, although Page was experiencing anxiety and hand tremors on December 16, 2010 (ECF No. 21-1 (sealed) at 1), it was reported on February 25, 2011, a month prior to his arraignment, that Page was feeling okay and that his medications were working fine with no reported side effects. (ECF No. 21-2 (sealed) at 1.) Similarly, Ms. Carpenter, who interviewed Page for his presentence investigation, indicated that Page only showed signs of anxiety and that she had no issues communicating with him. (ECF No. 17-16 at 27, 43.)

Accordingly, after "considering all of the relevant circumstances surrounding" Page's plea, *Brady*, 397 U.S. at 749, Page has failed to demonstrate that his guilty plea was not knowing, intelligent, or voluntary. Further, Page has failed to demonstrate that he was incompetent when he entered his guilty plea. *See Godinez*, 509 U.S. at 396. Thus, the state courts' ruling that "[n]othing in the plea canvas suggests that [Page] was impaired and [Page] acknowledged in his guilty plea agreement that he was not under

1 the influence of any substance or drug that impaired his ability to understand the agreement or the guilty plea proceedings," (ECF Nos. 18-1 at 2, 19-6 at 2-3) was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Page habeas corpus relief with respect to Ground 1.[2]

**B. Ground 2**

In Ground 2, Page claims that his federal constitutional rights were violated because his counsel failed to investigate his medical condition prior to him entering his plea. (ECF No. 16 at 11.) Page argues that his counsel's conduct fell below an objective standard of reasonableness and that there is prejudice due to him entering a constitutionally deficient plea. (*Id.* at 13.) Respondents assert that Page never informed his counsel of any issues with his medication, and counsel had no independent reason to know that Page was having any issue understanding the proceedings. (ECF No. 29 at 9.)

This ground was raised on the appeal in Page's state habeas action. (ECF No. 19-3 at 18 ("trial counsel failed to adequately investigate Mr. Page's medical condition prior

---

[2]Page also argues that the judge presiding over his motion to withdraw his plea was not the same judge that accepted his plea, so she was not in a position to assess his demeanor during the plea canvas. (ECF No. 34 at 9.) At the initial hearing on Page's motion to withdraw his guilty plea, the judge indicated that she had not "reviewed the JAVS to ascertain his demeanor, you know, his comprehension" but that she would "review the JAVS if need be" after Page and his counsel obtained information regarding his medication. (ECF No. 17-11 at 5, 7.) Further, during the evidentiary hearing, the court admitted Page's arraignment court video and audio as an exhibit. (ECF No. 17-16 at 44-45.) Accordingly, although the judge presiding over his motion to withdraw his plea was not the same judge that accepted his plea, the judge had a visual and audio recording of the arraignment to view, so this argument lacks merit.

Page also argues that he was less likely to understand the plea process because he had no prior convictions and that his signature on the final page of the plea should only be construed as an acceptance of the plea, not as an assertion of his ability to understand the agreement. (ECF No. 34 at 10.) Because Page indicated during his arraignment that he read and understood the plea agreement (*see* ECF No. 17-7 at 4), these arguments also lack merit.

to Mr. Page's entry of plea.").) The Nevada Court of Appeals held that "Page fails to demonstrate counsel was deficient. Counsel testified at the postconviction evidentiary hearing he had no reason to believe the medications Page took affected his ability to understand the proceedings. The district court concluded counsel was credible and substantial evidence supports the decision of the district court." (ECF No. 19-6 at 2.) The Court finds that the ruling of the Nevada Court of Appeals was reasonable.

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

At the hearing on his motion to withdraw his plea, Page's attorney, Mr. Kevin Speed, Esq. (hereinafter Speed), indicated that Page did not disclose that he was on any

medications during the negotiation process or when he signed the plea agreement. (ECF No. 17-11 at 3.) Similarly, during the post-conviction hearing, Speed testified that he did "learn that [Page] had been taking medication," but that he,

> did not know that [at the time he was going over the plea with Page] because Mr. Page didn't share that with [him]. There is a portion of the guilty plea agreement that specifically asks a defendant whether he is under the influence or taking any medication that would affect his ability to understand the guilty plea agreement, and to all of those questions Mr. Page answered in the negative.

(ECF No. 18-11 at 10.) Speed testified that Page "had not complained of anxiety or nervousness," that he did not notice anything "that would raise any red flags," and that he did not seem "loopy" or under the influence of any drugs at any time. (*Id.* at 14-15.) Speed clarified that "[i]t was a stressful situation obviously, and I understand – it is understandable for a person charged with the number and type of crimes that Mr. Page was charged with to be nervous, to be anxious, but over and above that, no, [he] didn't notice anything that would raise concerns." (*Id.* at 14.) Speed also testified that "Mr. Page understood the risks of proceeding to trial," that "he came to the decision it seemed rationally to enter the guilty plea negotiations," and that "he seemed fine" regarding his "ability to understand the process and the punishments, the penalties that went along with the crimes that he was charged with." (*Id.* at 18, 28.)

"When counsel has reason to question his client's competence to plead guilty, failure to investigate further may constitute ineffective assistance of counsel." *U.S. v. Howard*, 381 F.3d 873, 881 (9th Cir. 2004); *see also Tharpe v. Warden*, 834 F.3d 1323, 1342 (11th Cir. 2016) (finding that petitioner "has failed to identify . . . what 'red flags' requiring further investigation concerning [his] background should have been seen by [his counsel] under the circumstances as they knew or reasonably should have known them to be at the time of their investigation"); *Gonzales v. Knowles*, 515 F.3d 1006, 1015 (9th Cir. 2008) ("Absent any objective indication that [the defendant] suffered from any mental illness, [trial counsel] cannot be deemed ineffective for failing to pursue this avenue of mitigation where [the defendant]'s mental illness seemed unlikely."); *Douglas v.*

*Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003) ("Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired."); *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990) ("It must be a very rare circumstance indeed where a decision not to investigate would be 'reasonable' after counsel has *notice* of the client's history of mental problems.") (emphasis added). Here, there is no reason for Speed to have questioned Page's competence—Page never informed Speed that he was taking any medication, Page never explained to Speed that he was feeling anxious or nervous, and Page did not exhibit any signs that he was medicated or that we was having comprehension issues. Without notice that Page was taking medication or objective evidence suggesting that Page was impaired, there was no basis for Speed to have investigated.

Moreover, Speed's testimony that he was unaware that Page was on any medication is supported by the fact that Page signed a plea agreement stating that he was "not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair [his] ability to comprehend or understand this agreement or the proceedings surrounding [his] entry of this plea." (ECF No. 17-6 at 5.) *See also Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (reasoning that "the state court record [does not] contain any evidence that [petitioner] had been taking 'powerful anti-psychotic medications' at the time of his plea" because "both [petitioner] and his counsel signed sworn statements on the day [petitioner] entered his plea averring that [petitioner] was not under the influence of any drug that would affect his ability to understand his actions.") Therefore, Speed's actions did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. Furthermore, even if Speed's representation was deficient, Page makes no showing of a reasonable probability that, but for Speed's alleged inadequate investigation into his medications, he would not have pled guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59.

Page also argues that the state court used a substantial evidence test rather than the de novo evaluation required by *Strickland*, so no deference is owed under AEDPA.

1  (ECF No. 34 at 14.) If the state court used the wrong standard, this court "need not defer to that decision" and, instead, may analyze the claim de novo. *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016). However, whether this court reviews the claim de novo or with deference, the conclusion is the same: Page has failed to show that his counsel's performance was deficient pursuant to *Strickland*.

Accordingly, the Nevada Court of Appeals' ruling that "Page fails to demonstrate counsel was deficient" (ECF No. 19-6 at 2) was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Page habeas corpus relief with respect to Ground 2.

## V.  CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

Applying this standard, the Court finds that a certificate of appealability is unwarranted in this case. The Court will deny Page a certificate of appealability.

## VI.  CONCLUSION

It is therefore ordered that the Amended Petition for Writ of Habeas Corpus (ECF No. 16) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

///

///

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 22nd day of August 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE